UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a Pennsylvania corporation,<br><br>Plaintiff,<br><br>v.<br><br>ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, an Iowa corporation,<br><br>Defendant. | No.  2:12-cv-01380-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through the present insurance coverage lawsuit, Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union" or "Plaintiff") seeks, <u>inter alia</u>, contribution and other equitable and declaratory relief from Defendant Allied Property and Casualty Insurance Company ("Allied" or "Defendant") on grounds that National Union, an excess carrier, paid monies to settle injury claims that Allied's primary policy should have covered.  Jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332.  Presently before the Court are motions for summary judgment/summary adjudication filed on behalf of both carriers pursuant to Federal Rule of Civil Procedure

///

56.[1]  For the reasons set forth below, Defendant's Motion for Summary Adjudication (ECF No. 44), which seeks a determination that Allied owed no obligation to reimburse National Union under the terms of Allied's policy, is granted. Plaintiff National Union's Motion for Summary Judgment (ECF No. 52) is denied.[2]

## BACKGROUND

In the early morning hours of May 2, 2010, Robert Brewer lost control of the 2006 Porsche Cayenne he was driving along Scotts Flat Road in Nevada County, California. Pl.'s Stmt. of Undisputed Facts ("PUF") No. 1.  As a result of losing control of the motor vehicle, the Porsche veered off the roadway and struck two trees.  Def.'s Stmt. of Undisputed Facts ("DUF") No. 29.  In addition to his wife, Cheryle Brewer, the Porsche had two other passengers, Michael and Susan Foster, who were friends of the Brewers. PUF No. 2. The Fosters both sustained serious injuries.  PUF No. 7-8.

Earlier in the evening of May 1, 2010, the Fosters had met Robert and Cheryle Brewer at Friar Tuck's, a restaurant in Nevada City, allegedly to celebrate Susan Foster's birthday.  PUF No. 3.  The Brewers claim they decided to use the Porsche Cayenne, which had four-wheel drive capability, because of adverse winter weather conditions and because the stretch of Highway 20 between their home and Nevada City purportedly became slick and dangerous in such conditions.  PUF No. 32-34.  The accident occurred on the way back to the Brewer residence.  PUF No. 6.  Mr. and Mrs. Foster had decided to leave their car at the restaurant and spend the night at the Brewers' home.  PUF No. 5.

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

It is undisputed that the Porsche Cayenne driven by Robert Brewer at the time of the accident was owned by the Brewers' company, Brewer Refrigeration, Heating & Air Conditioning, Inc. ("the Brewer Corporation"). PUF No. 23-24. The Brewer Corporation is a closely held company with Robert and Cheryle Brewer as its only officers. DUF No. 5, 6. As a result of the accident and the injuries they sustained, Michael and Susan Foster sued both the Brewers and the Brewer Corporation for compensation and damages ("Foster lawsuit"). PUF No. 7, 8.

At the time of the accident, the Brewers had several insurance policies that covered their business and personal vehicles. PUF No. 12, 14, 44, 47, 48. Two policies were in place to cover the corporate vehicles, including the 2006 Porsche involved in the accident. The first business policy was issued to the Brewer Corporation by Nationwide Mutual Automobile Company ("Nationwide"), which is not a party to this lawsuit. DUF No. 27. It is undisputed that the Porsche was listed as Vehicle #19 on the "Schedule of Covered Autos You Own" contained within the Nationwide policy. Id. That policy contained coverage limits of $1,000,000. DUF No. 31. In addition, Plaintiff National Union issued a commercial excess liability policy to that was "above" the underlying Nationwide business auto policy. DUF No. 33.

In addition to the two business policies enumerated above, Robert and Cheryle Brewer also had two automobile policies covering their personal vehicles. DUF No. 23. Their primary policy, issued by Defendant Allied, listed two vehicles, a 1992 Jeep Wrangler and a 1987 Porsche 911 Carrera but did not list the 2006 Porsche. DUF No. 24. The fourth and final policy covering either the corporate or business vehicles was a personal umbrella insurance policy that applied over and above the Allied primary personal policy. Mem. of P. &. A. in Supp. of Def.'s Mot. for Summ. J. at 2 (ECF No. 44).

The Foster lawsuit ultimately settled for $1.9 million. PUF No. 42. The primary Nationwide policy tendered its $1 million policy limit to effectuate that settlement. Id. The National Union commercial excess policy paid the remaining $900,000 after Defendant Allied declined to contribute. PUF No. 43.

As indicated above, through the present lawsuit National Union seeks to recover the $900,000 it paid to fund the settlement on grounds that the Allied policy should have been triggered before Nationwide owed anything by way of excess. <u>Id.</u> Allied contends, however, that its policy expressly excludes any coverage for use of the 2006 Porsche, since that vehicle was "available for the regular use" of the Brewers but not listed as a "covered auto" under their personal policy. ECF No. 44 at 7. The Allied policy provides, in pertinent part, as follows:

> B. We do not provide Liability Coverage for the ownership, maintenance or use of:
>    …
>    2. Any vehicle other than your covered auto which is
>       a. owned by you or
>       b. furnished or available for the regular use of any person designated in the Declarations as a named insured or spouse of such person.

PUF No. 46. National Union, for its part, contends that Allied's reliance on the "regular use" exclusion is no more than a misguided attempt to avoid providing coverage. Mem. of P. &. A. in Supp. of Pl.'s Mot. for Summ. J. at 9 (ECF No. 55). Plaintiff and Defendant now both move for summary judgment.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). One of the principal purposes of a Rule 56 motion for summary judgment is to dispose of factually unsupported claims or defenses. <u>Celotex Corp.</u>, 477 U.S. at 325.

///

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Id. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

Although a personal automobile policy like that issued by Allied would ordinarily cover an insured driver when driving another car, as stated above, the present dispute revolves around the applicability of an exclusion from coverage contained in Allied's personal policy. Specifically, Allied excludes coverage for use of any vehicle "furnished or available for the regular use" of one of the insureds when such vehicle is not covered under the policy. PUF No. 46. A regular use provision like that contained in the Allied policy is not meant to eliminate coverage for isolated use of a vehicle for which the

insured does not pay a premium. Instead, it operates to bar coverage for non-listed vehicles so as to "prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured." Interinsurance Exch. v. Smith, 148 Cal. App. 3d 1128, 1138 (Ct. App. 1983).

According to Plaintiff, the Allied "regular use" exclusion does not apply to the circumstances of the case at bar because the Brewers did not use the 2006 Porsche for personal purposes on a "regular" basis and happened to use it on the evening of the accident only due to "exceptional circumstances." Those circumstances entailed both adverse wintry weather conditions and the Brewer's own alleged informal agreement, as sole officers of the closely held corporation that owned the Porsche, that it could be used that night as opposed to the Brewers' personal vehicles which, as stated above, were not equipped with four wheel drive. PUF No. 32-34.[3] According to Allied, however, Cheryle Brewer, one of the named insureds under its policy, kept the keys to the 2006 Porsche in her possession at all times, had the car garaged at her house every evening, and by her own admission could use the vehicle whenever she wanted. Because the car was consequently "available" for Cheryle's use on an unlimited basis, Allied maintains that the exclusion applies. Indeed, even Robert Brewer testified that although he seldom used the car, he could do so when he chose, without asking his wife:

> Q. Any time you used [the Porsche] in the times that you did, you didn't have to get anybody's permission or consent to use it, did you?
>
> A. No.
>
> Q. And that was true with respect to your wife as well, correct:
>
> A. Correct.

---

[3] According to Defendant, whether or not the weather at the time of the incident was treacherous is disputed. Def.'s Response to Pl.'s Stmt. of Undisp. Facts 32-34 (ECF No. 59). However, as the weather at the time of the accident is not material to the analysis of whether the 2006 Porsche was available for use by the Brewers, that issue is not pertinent to the Court's determination of this matter.

ECF No. 48-2 at 15, Robert Brewer Dep., 27:5-11, Ex. B to the Decl. of Karen Uno.

Cheryle Brewer's testimony is consistent with that of her husband:

> Q.  But that process [obtaining permission] didn't have to take place with you, you could use it any time you wanted?
>
> A.  Yes.
>
> Q.  And so could you husband?
>
> ….
>
> A.   He could.

ECF No. 48-1 at 10, Cheryle Brewer Dep., 61:16-22, Ex A to the Decl. of Karen Uno.

      Turning first to the meaning of the term "regular use," the California Supreme Court interpreted the words "regular use" to mean "the principal use, as distinguished from a casual or incidental use. . ." Kindred v. Pacific Auto Ins. Co., 10 Cal.2d 463, 465, 75 P.2d 69 (1938).  The phrase "regular use" in insurance policies has since been litigated and interpreted by several California courts.  See Truck Ins. Exch. v. Wilshire Ins. Co., Cal. App. 3d 553, 561-562 (1970) (finding that an automobile loaned for a limited period of time, for restricted use to a geographical area, and for a limited purpose was not "regular use"); Safeco Ins. Co. v. Thomas, 244 Cal. App. 2d 204, 206–207 (1966) (finding that an employee's "unusual" use of a business car did not render that car available for his regular use); Pacific Auto Ins. Co. v. Lewis, 56 Cal. App. 2d 597, 600 (1943) (finding a business vehicle loaned to an employee for business use was not available for his regular use even though the employee obtained special permission on one occasion to use the automobile for personal purposes).

      Given the Brewers' virtually unfettered access to the 2006 Porsche, it would appear hard to argue that they did not enjoy a "regular use" of the vehicle as that term is defined in California law.  That is not the end of the inquiry, however, since the Allied exclusion qualifies "regular use" in two ways:  it applies if the vehicle was either "available for regular use" by an insured, or alternatively if the vehicle was "furnished for

1  the regular use" of one of the insureds on the Allied policy, either Robert or Cheryle
2  Brewer.
3     In determining the meaning of the phrase "available for regular use," the California
4  Court of Appeals decision in Smith is instructive.  The Smith court held that a policy
5  holder's insurance claim was erroneously denied by the policy carrier under the regular
6  use exclusion after the daughter of the policy holder was involved in a collision.  Smith,
7  148 Cal. App. 3d at 1138.  The court found that that due to numerous restrictions placed
8  on the daughter's use of the vehicle by the policy holder, the vehicle was not "available
9  for regular use."  Id.  The Smith court looked at the history of prior use of the vehicle,
10 including the fact that the father had to give consent to the daughter prior to her use of
11 the vehicle, the fact that the daughter's use was only allowed for "functional" purposes
12 and never for pleasure, and the fact that because the daughter did not possess keys and
13 was not allowed to leave a defined geographical area without permission.  Id. at 1132.
14    Although the circumstances of this matter, involving as they do virtually no
15 restrictions on the Brewers' use of the 2006 Porsche, are clearly distinguishable, it is
16 Smith's discussion of the distinction between the terms "available for regular use" and
17 "furnished for regular use" that is most significant.  The policy at issue in Smith provided
18 coverage of vehicles not owned by an insured so long as the vehicle was "not owned by
19 or available for regular use" of an insured.  Id.  Accordingly, Smith described the problem
20 posed by the case as the "legal definition, the meaning to be ascribed to the phrase
21 'available for regular use' and whether the conceded facts fit the legal definition."  Id. at
22 1133.
23    Significantly for purposes of this case, the Smith court was careful to distinguish
24 the difference between "available for regular use" and "furnished for regular use,"
25 pointing out that the terms are "not synonymous."  As Smith explains:

26>     The connotation of the term "furnish" suggests that it refers to
>     instances when the automobile was actually utilized by
27>    defendant. . . ["Available' requires] that the potential use of
>     the automobile be to a substantial degree under the control of
28>    the insured."

9

Id. at 1137.  Smith goes on to note that a car is not "available" where "keys and specific permission must be obtained each time use of the car is desired"; instead, "available for regular use" is restricted to circumstances where an "automobile could usually and regularly be had or be used whenever it was wanted, needed or desired and that such use could be made without seeking permission of the owner."  Id.

As opposed to the facts analyzed by the court in Smith, the present case involves no such restrictions placed on the Brewers' access the 2006 Porsche, and therefore the vehicle was available for their regular use.  See also Highlands Ins. Co. v. Universal Underwriters Ins. Co., 92 Cal. App. 3d 171, 176 (1979) (finding that where the evidence revealed expressly that no limitations of any kind had been placed on use of the car, such use falls under the regular use exclusion).

Because the term "available for regular use" focuses on access to the vehicle and consequently on whether its potential use is substantially within the control of the insured, whether or not the 2006 Porsche's actual use was "extraordinary" the evening of the accident because of adverse weather conditions is irrelevant.  Although that distinction is consistent with the cases cited by Plaintiff in support of its position which focus on whether a vehicle was "furnished" for regular use, since that term focuses on a particular use rather than the ability to control which is key to the determination of "available" for regular use, those arguments fail.

In Pacific Auto Ins. Co., for example, the court only reviewed what was to be considered "furnished for regular use" of a corporate vehicle and not what was "available for regular use."  Pacific Auto Ins. Co., 56 Cal. App. 2d at 600-601.  In Pacific Auto Ins. Co. a salesman, who generally drove a company car during the day and occasionally at night, asked permission to take the company car on a personal trip.  Id.  While on this trip, the salesman was involved in an accident.  Id.  The court, by looking at the time, place, and purpose of the salesman's trip, determined that the long distance driven was out of the normal use of the salesman, and because the salesman requested permission to take the company car, such a trip was, therefore, out of the ordinary and did not

qualify as being "furnished" under the regular use exclusion. Id.  As opposed to the salesman in Pacific Auto Ins. Co., the Brewers did not have to request to use the 2006 Porsche.  The vehicle was available for their regular use.  DUF Nos. 17, 18.

The issue, then, is not whether the 2006 Porsche was furnished, but whether the vehicle was available to the Brewers.  Because the exclusion is framed in the alternative, it applies either when the vehicle is "furnished" or "available for regular use."  As stated above, it is undisputed that Mrs. Brewer kept the keys to the vehicle at all times.  It is further undisputed that the 2006 Porsche had no written rules or restrictions placed on its use, and that the automobile was parked at the Brewers' residence every evening and thus would be available at all times.  DUF Nos. 2-12.  Defendant's Motion for Summary Judgment here is predicated on whether the potential to use the 2006 Porsche was within the Brewers' control, and whether the "available for regular use" exclusion accordingly applied.  Def.'s Reply in Supp. of Mot. for Summ. J. at 1 (ECF No. 75).  As indicated above, this is a different analysis than whether or not the vehicle was "furnished for regular use" which entails an analysis of the circumstances in which the vehicle was actually utilized.  Smith, 148 Cal. App. 3d at 1137.

Plaintiff asserts that Defendant's use of Smith only supports Plaintiff's position because the court in that matter did not find that the regular use exclusion applied.  However, as previously discussed, the court in Smith found that the regular use exclusion did not apply only after finding that numerous restrictions on use were in place.  Smith, 148 Cal.App.3d at 1132.  Additionally, while Plaintiff points to a similar finding against the notion of use in Mercury Ins. Grp. v. Checkerboard Pizza, 12 Cal. App. 4th 495, 498 (1993), there the court found that the regular use exclusion did not apply only after determining that a short term rental agreement did not qualify as regular use under the generally accepted definition of that term, because such use is limited by its very nature.

Here, the Brewers' use of the 2006 Porsche was neither limited by a short term rental agreement as in Mercury nor confined by the numerous restrictions identified in

11

Smith to find the vehicle at issue there not "available for regular use."  Id. at 498; Smith 148 Cal. App. 3d at 1132.  Moreover, Plaintiff does not supply evidence that the Brewers were under any official restrictions that would suggest that the vehicle was not available for regular use; instead, it argues that use of the vehicle on the night of the accident was exceptional and consequently should not have constituted regular use.  ECF No. 55 at 12.  While that contention may be germane to whether the vehicle was "furnished" for regular use, as explained above, it does not render inapplicable the prong of the exclusion hinging on availability for regular use.

The Brewers, outside of asking themselves as directors and officers of the Brewer Corporation for permission to use the 2006 Porsche, were realistically without restriction as to the use of the 2006 Porsche.  That liberty to have unfettered access to the 2006 Porsche triggers the exclusion in the instant case.  The purpose of the regular use clause is to exclude coverage where a person has unlimited use of a car which he drives in addition to his own for some time, without paying an additional premium to his insurer.  Here, because the Brewers' use of the automobile was not restricted and was available for use at their discretion, any argument that it was primarily used for business purposes, or any argument that use on the night of the accident was for exceptional circumstances due to weather conditions, does not bar the 2006 Porsche as being available for regular use as that term is defined in the Brewers' personal insurance policy.  Consequently, the Court finds that the "available for regular use" exclusion in Defendant's policy applies, thereby entitling Allied to summary adjudication, negating any duty on its part to provide coverage as to the claims made against the Brewers in the Foster lawsuit.  .

///
///
///
///

**CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Adjudication (ECF No. 44), however, is GRANTED.  Allied owed no obligation, under the Personal Auto policy it issued to Robert and Cheryle Brewer, to reimburse Plaintiff National Union for monies National Union contributed to settle the Foster lawsuit.  Since resolution of that issue negates all claims made by Plaintiff in its Complaint, Plaintiff's Motion for Summary Judgment (ECF No. 52) is necessarily DENIED.  The Clerk of Court is directed to enter judgment in favor of Defendant Allied and close the file.

IT IS SO ORDERED.

Dated: April 11, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT